UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL ESTRADA HERNANDEZ,<br>Plaintiff,<br>v.<br>BFS GROUP OF CALIFORNIA LLC,<br>Defendant. | No. 2:26-cv-00633-DAD-CKD<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND<br><br>(Doc. No. 4) |

This matter is before the court on plaintiff's motion to remand this action to the Sacramento County Superior Court. (Doc. No. 4.) The pending motion was taken under submission on the papers. (Doc. No. 7.) For the reasons explained below, plaintiff's motion to remand will be denied.

**BACKGROUND**

On January 21, 2026, plaintiff Raul Hernandez filed a complaint in the Sacramento County Superior Court on behalf of himself, and others similarly situated against defendant BFS Group of California LLC. (Doc. No. 1-3.) As relevant to resolving the pending motion, plaintiff's complaint alleges as follows.

Defendant employed plaintiff in California from March 2019 to June 2025. (*Id.* at ¶ 4.) Plaintiff alleges that defendant required him and the other class members to work off-the-clock,

/////

including during required meal breaks, resulting in unpaid overtime wages.[1] (*Id.* at ¶ 21.) Plaintiff further alleges that defendant's "policy, practice, and/or procedure," (*id.* at ¶ 24), caused defendant to not pay class members "at their overtime rate of pay for all overtime hours worked." (*Id.* at ¶ 24.) Plaintiff seeks unpaid wages for "all overtime hours worked at the overtime rate of pay," (*id.* at ¶ 1), and alleges that defendant "often" employed class members for shifts longer than 10 hours, (*Id.* at ¶ 25).

Based on these and other allegations, plaintiff asserts the following eight causes of action: (1) failure to pay wages for all hours of work at the legal minimum wage rate in violation of California Labor Code §§ 1194, 1997; (2) failure to pay overtime wages in violation of California Labor Code §§ 510, 1194; (3) failure to authorize or permit meal periods in violation of California Labor Code §§ 512, 226.7; (4) failure to authorize or permit required rest periods in violation of California Labor Code § 226.7; (5) failure to indemnify employees for employment-related losses and expenditures in violation of California Labor Code § 2802; (6) failure to provide complete and accurate wage statements in violation of California Labor Code § 226; (7) failure to pay all wages timely upon separation of employment in violation of California Labor Code §§ 201, 202, 203; (8) unfair business practices in violation of California Business & Professions Code §§ 17200, *et seq*. (*Id.* at ¶¶ 46–170.)

On February 26, 2026, defendant filed an answer to plaintiff's complaint in the Sacramento County Superior Court. (Doc. No. 1-10 at 14). On February 27, 2026, defendant removed the action to this federal court pursuant to 28 U.S.C. §§ 1332(d), 1441, and 1446 based on diversity jurisdiction and the Class Action Fairness Act ("CAFA"). (Doc. No. 1.) On March 13, 2026, plaintiff filed the pending motion to remand this action back to the Sacramento County

/////

/////

[1] Plaintiff seeks to represent an overtime wage class (along with other claim-specific classes), defined as all individuals who are or were previously employed by defendant as direct or temporary employees at any time in the previous four years who worked more than eight hours in a workday or 40 hours in a workweek. (Doc. No. 1-3 at ¶ 44.)

Superior Court and a request for judicial notice.[2] (Doc. Nos. 4, 4-1, 4-2). On March 27, 2026, defendant filed an opposition to plaintiff's motion to remand. (Doc. No. 5.) On April 6, 2026, plaintiff filed his reply thereto. (Doc. No. 6.)

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction and have subject matter jurisdiction only where authorized by the Constitution and Congress. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Unless otherwise limited, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "Through CAFA, Congress broadened federal diversity jurisdiction over class actions . . . ." *Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 882 (9th Cir. 2013).

Under CAFA, federal courts have jurisdiction "over certain class actions, defined in [28 U.S.C.] § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013)). "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court." *Ibarra v. Manheim Invs. Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "[N]o antiremoval presumption attends cases invoking CAFA." *Dart Cherokee*, 574 U.S. at 89. However, "[t]he rule that a removed case in which the plaintiff lacks Article III standing must be remanded to state court under § 1447(c) applies as well to a case removed pursuant to CAFA as to any other type of removed case." *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) (citing 28 U.S.C. § 1453(c)(1)).

/////

[2] The court need not consider the documents listed in plaintiff's request for judicial notice, (Doc. No. 4-2), in resolving plaintiff's pending motion to remand. Thus, that request is denied as moot. *See Langer v. Music City Hotel LP*, No. 21-cv-04159-PJH, 2021 WL 5919825, at *5 (N.D. Cal. Dec. 15, 2021) ("The court does not consider this exhibit in deciding this motion, and it therefore denies as moot the request for judicial notice of the exhibit.").

## DISCUSSION

Defendant removed this putative class action under CAFA, claiming that there is minimal diversity, the putative class exceeds 100 members, and the amount in controversy in this action exceeds $5 million. (Doc. No. 1 at ¶ 11.) In his pending motion to remand, plaintiff argues that defendant has failed to make an adequate showing that the amount in controversy here exceeds $5 million.[3] (Doc. No. 4-1 at 2.) Specifically, plaintiff argues that defendant erred in its amount in controversy calculations by (1) including employees within the pleaded putative class whose claims are barred by a prior settlement and (2) employing "unreasonable and unsupported assumptions." (*Id.* at 2–3.) The court addresses each argument in turn.

### A. The Prior Settlement

Plaintiff argues that the court should limit the number of employees and workweeks included in the amount in controversy calculations in this case because there are employees within the putative class whose claims overlap with those in a previous class action settlement.[4] (Doc. No. 4-1 at 5–6.) Specifically, plaintiff argues that including the overlapping employees renders defendant's employee and workweek numbers "irreparably skewed" because the employees that fall within the settled class action would be "ineligible for any recovery for workweeks after the settlement and release periods." (*Id.* at 6) (emphasis removed). Functionally, plaintiff argues that the prior settlement extinguishes any claims overlapping with the instant action, rendering them no longer in controversy. (*See* Doc. Nos. 4-1 at 5–6; 6 at 3–6.) Defendant persuasively responds in opposition that this argument is a "merits defense dressed up as a jurisdictional objection." (Doc. No. 5 at 2.)

"The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Arias v. Residence Inn by Marriott*, 936 F.3d

---

[3] Plaintiff does not dispute that the other requirements of CAFA are satisfied here. (*See* Doc. Nos. 4-1, 6.)

[4] For the first time in his reply, plaintiff raises a full faith and credit argument regarding the settlement of the prior class action. (Doc. No. 6 at 2–6.) However, the court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citation omitted).

920, 927 (9th Cir. 2019) (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010)). "In that sense, the amount in controversy reflects the maximum recovery the plaintiff could reasonably recover." *Id.* "[T]he strength of any defenses indicates the *likelihood* of the plaintiff prevailing; it is irrelevant to determining the amount that is at stake in the litigation." *Id.* at 928. "In other words, 'just because a defendant might have a valid defense that will reduce recovery to below the jurisdictional amount does not mean the defendant will ultimately prevail on that defense.'" *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 (9th Cir. 2020) (quoting *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010)).

Settlements in other cases may affect the ultimate recoverable amount, but they do not affect plaintiff's definition of the class nor the number of class members that fit within such definition. Evaluating plaintiff's argument requires examining the preclusive effect that the prior settlement has on the instant case. The court cannot do that at this jurisdictional inquiry stage of the litigation. *See Greene*, 965 F.3d at 774 (reversing the lower court where "[t]he district court improperly 'decide[d] the merits of the case before it could determine if it had subject matter jurisdiction.' [The plaintiff] cannot smuggle in merits-based arguments into the 'jurisdictional inquiry, which is supposed to be simple and mechanical.'") (citations omitted).[5] Indeed, as another district court has explained in addressing a similar argument:

> [T]he [c]ourt rejects [p]laintiff's suggestion that the [d]efendant's settlement of a different wage and hour class action limits [p]laintiff's class period such that [d]efendant's amount in controversy calculations, tied to the class period alleged in [p]laintiff's Complaint, must be reduced. Plaintiff could have amended [his] Complaint to shorten the class period in light of the final approval of the settlement of the other case . . . but [he] did not. Plaintiff's Complaint alleges a class period . . . and Defendant can rely on that class period when calculating the amount in controversy.

*Sanchez v. DSV Sols., LLC*, No. 23-cv-01112-PA-SP, 2023 WL 5277889, at *3 (C.D. Cal. Aug.

/////

---

[5] The court also notes that plaintiff alleges that "no other class actions have been filed against [d]efendants in the last four (4) years alleging wage and hour violations" in his complaint. (Doc. No. 1-3 at ¶ 2.)

15, 2023). Accordingly, the court concludes that the class size should not be reduced because of a prior settlement.

**B. Overtime Wages Claim**

Defendant argues that the amount in controversy as to plaintiff's unpaid overtime claim amounts to $9,039,262.43.[6] (Doc. No. 5 at 13.) In support of its position in this regard, defendant provides direct evidence of the number of employees, workweeks, and average pay for those employees, while assuming 30 minutes of unpaid overtime per workweek. (Doc. No. 1 at ¶ 30.) Plaintiff argues this assumption is unreasonable and unsupported by defendant's evidence. (Doc. No. 4-1 at 2–3.)

In support of its amount in controversy calculation, defendant offers the declaration of Mr. Chris Valle ("Valle"), its vice president of human resources, West Division. (Doc. No. 5-1 at ¶ 2.) Based on his review of the relevant data, Valle declares that defendant employed "approximately 7,994 non-exempt employees in California" between January 21, 2022, and March 27, 2026.[7] (*See id.* at ¶ 6.) This group of employees had a final rate of pay of $22.38 per hour and worked approximately 549,082 weeks.[8] (*Id.*) Plaintiff does not challenge the accuracy of this evidence. (*See* Doc. Nos. 4-1, 6.) Courts have held that defendants may rely upon such evidence in calculating the amount in controversy. *See Enomoto v. Siemens Indus., Inc.*, No. 22-56062, 2023 WL 8908799 at *2 (9th Cir. Dec. 27, 2023) ("A defendant is permitted to rely on a declaration from an individual who has reviewed relevant employee payroll and wage data to support its amount in controversy allegations.");[9] *Marquez v. Southwire Co.*, No. 21-cv-00252-

---

[6] Defendant arrives at this calculation by employing the following formula: $21.95 [average hourly pay of the 7,994 non-exempt employees in California during the relevant class period] × 1.5 [overtime rate] × 549,082 [estimated workweeks] × 0.5 [assumption of 30 minutes of unpaid overtime per week] = $9, 039,262.43.

[7] This is the relevant class period for plaintiff's overtime wage claim. (Doc. No. 1-3 at ¶ 44.)

[8] Defendant uses $21.95 as the hourly rate in its calculation, which is the average hourly rate for terminated employees. (Doc. No. 5-1 at 3.) Since the overtime class includes current employees, the court will use the $22.38 rate for the amount in controversy calculation.

[9] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

JGB-SP, 2021 WL 2042727, at *3–4 (C.D. Cal. May 21, 2021) (finding the declaration from the defendant's director of finance disclosing the number of employees during the class period, the number of workweeks they worked, and their average hourly pay rate to be sufficient to support its amount in controversy calculation). Accordingly, the court concludes that the Valle declaration is sufficiently reliable to support defendant's amount in controversy calculation.

Having established defendant's direct evidence, the court now examines defendant's assumptions, which provide the basis for its amount in controversy calculation.[10] A removing defendant may use "a chain of reasoning that includes assumptions" in calculating the amount in controversy. *Ibarra*, 775 F.3d at 1199. "[T]hose assumptions cannot be pulled from thin air" and "need some reasonable ground underlying them." *Id.* They "can be 'founded on the allegations of the complaint' and do not necessarily need to be supported by evidence. The district court's task is simply to determine if the defendant's 'reasoning and underlying assumptions are reasonable.'" *Perez v. Rose Hills Company,* 131 F.4th 804, 808 (9th Cir. 2025) (quoting *Arias*, 936 F.3d at 925 and *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022)). "What makes an assumption reasonable may depend on which element of the amount-in-controversy calculation is at issue." *Id.* at 808. For example, when the number of employees in a wage and hour class action is in dispute, it "may make sense to expect a defendant to introduce evidence" of that number because it can easily be "determined by examining the defendant's employment records." *Id.* In contrast, "it makes little sense to require a CAFA defendant to introduce evidence of the violation rate—really, the alleged violation rate—because the defendant

[10] Defendant has not provided the court with information regarding the proportion of the 549,082 workweeks where employees worked overtime, which would be weeks where the employee worked either over eight hours in one day or over 40 hours in the week. *See Attebery v. US Foods, Inc.*, No. 1:22-cv-1352 JLT BAM, 2024 WL 863795, at *4 (E.D. Cal. Feb. 28, 2024). Thus, defendant's 30-minute-per-workweek assumption necessarily implies that: (1) each workweek includes at least some overtime; and (2) the alleged policy of defendant requiring off-the-clock work adds up to 30 minutes per week. Accordingly, the court views both the proportion of workweeks that included overtime and minutes of unpaid overtime as pertaining to the "violation rate" assumption. However, neither party briefed this issue. (*See* Doc. Nos. 4-1, 5, 6.) Given the lack of a challenge from plaintiff, defendant "need not prove overtime is available—[p]laintiff is the one who alleged a claim for overtime pay and placed overtime at issue." *Aguilar v. Lab'y Corp. of Am.*, No. 22-cv-09061-DMG-SK, 2026 WL 1192132, at *4 (C.D. Cal. Apr. 29, 2026).

likely believes that the real rate is zero and thus that the evidence does not exist." *Id.* (emphasis removed). In that case, "a CAFA defendant can most readily ascertain the violation rate by looking at the plaintiff's complaint." *Id.* Defendant assumes, based on plaintiff's complaint, that there was 30 minutes of unpaid overtime during each workweek. (Doc. No. 1 at 11.)

In his complaint, plaintiff alleges that defendant's "policy, practice, and/or procedure" caused defendant to not pay class members "at their overtime rate of pay for all overtime hours worked." (Doc. No. 1-3 at ¶ 24.) This policy or practice "include[ed], but [was] not limited to" defendant requiring off-the-clock work, "including during what should have been their meal periods." (*Id.* at ¶ 21.) Plaintiff seeks unpaid wages for "all overtime hours worked at the overtime rate of pay," (*Id.* at ¶ 1), and alleged that defendant "often" employed class members for shifts longer than 10 hours, (*Id.* at ¶ 25). Notably, there is no language in the complaint limiting the overtime claim (*e.g.*, "but not all"). (*See* Doc. No. 1-3.)

Plaintiff argues that defendant's assumption of one violation per workweek "is meaningless unless it is foundationally tethered to something more than what [d]efendants' [*sic*] think this is what a 'pattern' is." (Doc. Nos. 4-1 at 10; 6 at 8.) Functionally, plaintiff asks for more evidence, characterizing it as "alternative ways" to "deduce[]" violation rates. (*See* Doc. No. 6 at 7.) Plaintiff's demand for alternative ways is not a different assumption or a proposed different rate—it is a bare request for more direct evidence of the violation rate, which the Ninth Circuit's decision in *Perez* forecloses.[11] *See Perez*, 131 F.4th at 808. If plaintiff believes that a different assumption than 30 minutes per week of unpaid overtime is "more reasonable," he was "free to propose that rate." *Id.* at 810. Additionally, district courts in this circuit have consistently found a 30-minutes-unpaid-overtime assumption to be reasonable. *See, e.g.*, *Biru v.*

---

[11] Specifically, plaintiff requests evidence like "time-clock manual adjustments" or a sample of several hundred employee timekeeping records, "suggesting 100% of every work week as presenting irregularities." (Doc. Nos. 4-1 at 10; 6 at 8.) In other words, plaintiff wants evidence of the defendant's alleged wrongdoing at this early jurisdictional determination stage in the litigation. This is not required. The court also disregards plaintiff's arguments advanced in the pending motion that the complaint alleges violations "at times." (Doc. No. 4-1 at 7.) That language does not appear in the complaint, except where plaintiff alleges that he and the class were employed by defendant "[a]t times relevant to this Complaint." (Doc. No. 1-3 at 20; *See* Doc. No. 1-3.)

*Centria Health Care, LLC*, No. 26-cv-00302-HSG, 2026 WL 2547397, at *6 (N.D. Cal. Aug. 28, 2026) (finding that "it was reasonable for [the [d]efendant to assume that [the] [p]laintiff and the class worked two hours 'off the clock' each week, and that 30 minutes of that . . . time should have been compensated at an overtime rate"); *Hender v. Am. Directions Workforce LLC*, No. 2:19-cv-01951-KJM, 2020 WL 5959908, at *8 (E.D. Cal. Oct. 8, 2020) (finding one hour overtime per workweek reasonable and noting that "[o]ther courts have approved, persuasively, a 20 percent violation rate when a plaintiff, as [the] plaintiff does here, alleges a 'pattern and practice' of defendants' failing to provide overtime compensation").

Accordingly, the court finds defendant's assumption that each workweek included 30 minutes of unpaid overtime to be reasonable and that the amount in controversy for unpaid overtime has been shown to be $9,216,341.37.[12] Given the reasonableness of this calculation, the court need not also calculate the amount in controversy associated with plaintiff's remaining claims or attorney's fees because the total amount in controversy in this case is well over the $5 million minimum required under CAFA.

## CONCLUSION

For the reasons explained above,

1. Plaintiff's motion to remand (Doc. No. 4) is DENIED;
2. The court hereby SETS the Initial Scheduling Conference in this matter for December 28, 2026 at 1:30 p.m. before District Judge Dale A. Drozd by Zoom; and
3. The parties are directed to file an updated joint status report regarding case scheduling no later than December 14, 2026.

IT IS SO ORDERED.

Dated: **November 3, 2026**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

---

[12] $22.38 [average hourly pay] × 1.5 [overtime rate] × 549,082 [estimated workweeks] × 0.5 [30 minutes of unpaid overtime per week] = $9,216,343.37.